UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

THOMAS MYLER,

     PLAINTIFF,                               Civil Case No.:

v.

                                       ***JURY DEMAND***

TRANS UNION LLC,

     DEFENDANT.

## COMPLAINT

Plaintiff Thomas Myler ("Mr. Myler" or "Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant Trans Union LLC ("Trans Union" or "Defendant") as follows:

## PRELIMINARY STATEMENT

1. This is an action for an actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2. One of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

3. The FCRA requires that when a consumer reporting agency, such as Trans Union, prepares a consumer report, it must "follow reasonable procedures to assure the maximum possible

accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

4. Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. Federal Trade Commission surveys have shown "between 1998 and 2003, approximately 27.3 million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone."[1]

6. On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").[2]

7. FACTA "legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world." *Id*.

8. Moreover, "[with] a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families [because of FACTA]. *Id*.

9. The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[3]

---

[1] https://www.ftc.gov/news-events/news/press-releases/2003/09/ftc-releases-survey-identity-theft-us-273-million-victims-past-5-years-billions-losses-businesses Last visited February 28, 2026.

[2] https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html Last visited February 28, 2026.

[3] https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited February 28, 2026.

10. FACTA imposes additional duties on CRAs to repair the damage done to identity theft victims' credit files by blocking information that is the result of identity theft.

11. Specifically, CRAs are required to block the reporting of any information in the file of a consumer that the consumer identifies is a result of identity theft, not later than 4 business days after receiving (1) appropriate proof of identity; (2) a copy of the identity theft report; (3) the identification of such information by the consumer; and, (4) a statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

12. The ability to obtain a "block" of information is especially important to consumers because once a block is in place, the account is permanently removed from the consumer's credit report and creditors are prohibited from sending the blocked account to collections. *See* 15 U.S.C. § 1681m(f). On the other hand, when a dispute is made without a claim of identity theft may result in the deletion or suppression of an account, but the creditor may continue with collection efforts. *See* 15 U.S.C. § 1681i.

13. A CRA may decline to "block" disputed information only if the CRA reasonably determines that the consumer's request is based on a material misrepresentation or made in error. *See* 15 U.S.C. 1681c-2(c)(1). When a CRA declines to block information disputed pursuant to § 1681c-2(a), the CRA must notify the consumer, in writing, of the business name and address of any furnisher that it contacted upon receiving the identity theft report and that the consumer has a right to add a statement to the file disputing the accuracy or completeness of the disputed information. *See* 15 U.S.C. §§ 1681c-2(c)(2) and 1681i(a)(5)(B).

14. When a CRA does not determine that a material misrepresentation or error occurred, it cannot decline to block before it requests additional information from the consumer

3

for the purpose of determining the validity of the alleged identity theft. *See* 12 C.F.R. § 1022.3(i)(1)(iii)(A).

15.     "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

16.     Despite the FCRA's requirements, Trans Union regularly declines to block the reporting of fraudulent information by wrongfully rejecting valid identity theft reports outright and relying instead on the same verification process it uses for non-identity theft disputes.

17.     In violation of the FCRA, Trans Union willfully and negligently failed to provide Mr. Myler the notice required by 15 U.S.C. § 1681c-2(c)(2) after declining to block information that, pursuant to 15 U.S.C. § 1681c-2(c)(1), Plaintiff alleged is the result of identity theft.

18.     In further violation of the FCRA, Trans Union willfully and negligently declined to block the reporting of information alleged by Mr. Myler to result from identity theft in violation of 15 U.S.C. § 1681c-2(a), despite receipt of all required documentation from Plaintiff.

19.     The plain language of § 1681c-2 is clear, and Trans Union is on notice of its requirements, both from the guidance of the FTC and the prior decision in *Osada v. Experian Info. Solutions, Inc.*, No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012).

20.     According to standardized policies and procedures, Trans Union willfully treats valid identity theft claims as regular credit report disputes.

4

21. Any identity theft claims Trans Union deems to be lacking in information, it willfully, and according to its own standardized policies and procedures, declines to block the reporting of the fraudulent information outright rather than requesting additional information or documentation directly from the consumer (as it did with Mr. Myler) and as required by 12 C.F.R. § 1022.3(i).

22. In 2004, according to the Federal Bureau of Investigation, "[i]dentity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year.[4]"

23. Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[5]

24. In 2023, fraud and identity theft complaints accounted for 67% of all complaints made to the FTC.[6]

25. In furtherance of its underlying purposes, the FCRA also sets out the requirements and obligations that each consumer reporting agency ("CRA") must follow when consumers dispute the accuracy of the information reported in their credit reports. *See* 15 U.S.C. § 1681i.[7]

26. Accordingly, the FCRA holds CRAs responsible for taking reasonable steps to correct a consumer's credit report once the theft is brought to their attention. *See Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 506-07 (4th Cir. 2007) ("Of course, Equifax bore not

---

[4] https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited February 28, 2026.

[5] https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited February 28, 2026.

[6] https://www.ftc.gov/system/files/ftc_gov/pdf/CSN-Annual-Data-Book-2023.pdf Last visited February 28, 2026.

[7] Furnishers have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2.

responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct [the plaintiff]'s credit report once she has brought the theft to the company's attention.").

27. Thus, the FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

28. Notwithstanding, Trans Union has been sued thousands of times wherein an allegation was made that it violated the FCRA.

29. Trans Union has been ordered in single plaintiff FCRA lawsuits to produce discovery responses on the number of times it has been sued.

30. The Consumer Financial Protection Bureau ("CFPB") has filed complaints against Trans Union and alleged violations of the FCRA.

31. On October 12, 2023, the CFPB and FTC filed a joint complaint in the District of Colorado against Trans Union for alleged violations of FCRA Section 1681e(b).[8]

32. On October 18, 2023, a "Stipulated Order for Permanent Injunction, Monetary Judgment, Civil Penalty Judgment, And Other Relief" was filed and agreed to by the CFPB, FTC and Trans Union, which included an order from the court for Trans Union to pay eleven million dollars to the "Affected Consumers."[9]

---

[8] https://files.consumerfinance.gov/f/documents/cfpb_transunion-rental-screening-solutions-inc-trans-union-llc_complaint_2023-10.pdf Last visited February 28, 2026.

[9] https://files.consumerfinance.gov/f/documents/cfpb_transunion-rental-screening-solutions-inc-trans-union-llc_stip-final-judg-order.pdf Last visited February 28, 2026.

33. The CFPB previously filed complaints against Trans Union related to the FCRA or deceptive marketing practices or both.[10]

34. Disturbingly, in October 2024, Trans Union ranked #1 for the number of complaints received by the FTC, 93,234 received in one month alone.[11]

35. Likewise, prior to this lawsuit, Trans Union received consumer complaints directly from consumers and indirectly from the Better Business Bureau concerning other similar incidents, including over 27,000 disputes in the preceding three years.[12]

36. Notwithstanding thousands of consumer complaints, the sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the defendant.

37. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

38. Trans Union LLC reported over $ 4.5 billion in revenue for 2025.[13]

**JURISDICTION & VENUE**

---

[10] *See* https://files.consumerfinance.gov/f/documents/cfpb_transunion_complaint_2022-04.pdf, https://files.consumerfinance.gov/f/documents/201701_cfpb_Transunion-consent-order.pdf, Last visited February 28, 2026.

[11] https://www.ftc.gov/system/files/ftc_gov/pdf/top_co_complaints_october_2024.pdf Last visited February 28, 2026.

[12] https://www.bbb.org/us/il/chicago/profile/credit-reporting-agencies/transunion-llc-0654-2713/complaints Last visited February 28, 2026.

[13] https://newsroom.transunion.com/transunion-announces-strong-fourth-quarter-and-full-year-2025-result/ Last visited February 28, 2026.

39. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C § 1331.

40. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mr. Myler's claims occurred in this judicial district and division.

41. Plaintiff communicated with Trans Union concerning the disputed information from this judicial district.

42. Trans Union sent communications concerning Mr. Myler's disputes to Plaintiff in this judicial district.

## PARTIES

43. Mr. Myler is an adult individual and a resident of this judicial district.

44. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

45. Defendant Trans Union regularly does business in this judicial district and is a Delaware limited liability corporation with its principal place of business located at 555 W. Adams St., Chicago, Illinois 60661.

46. Trans Union is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

47. Plaintiff is a victim of identity theft.

48. In or around 2023, an impostor applied for and opened a student loan account using some of Mr. Myler's personal identifying information ("PII").

49. Mr. Myler's Trans Union credit reports include inaccurate information including but not limited to a student loan with Department of Education student loan, in the amount of $ 1,730 (hereinafter, collectively referred to as the "Inaccurate Information").

8

50. The item of information is inaccurate because the account does not belong to Mr. Myler.

51. Mr. Myler did not apply for, authorize someone on her behalf to apply for credit with, or receive any goods, benefits or services related to the account identified above.

52. Plaintiff reported the identity theft to law enforcement, including the Cookeville Police Department and the Federal Trade Commission.

53. Mr. Myler disputed the Inaccurate Information directly to Trans Union.

54. Notwithstanding, Trans Union failed to delete the disputed Inaccurate Information or fully, reasonably, properly reinvestigate Plaintiff's disputes or block the disputed items of information from appearing on Plaintiff's file.

55. Thereafter, Trans Union prepared consumer reports related to Mr. Myler that included the Inaccurate Information after receipt of Plaintiff's disputes.

56. Trans Union included the derogatory Account in Plaintiff's file as follows:

    a. collection account;

    b. charge off; and,

    c. with a past due balance of $ 1,724.

57. The above reported credit information is untrue.

58. The inaccurate information harms Mr. Myler's credit reputation because the Account history does not accurately depict Plaintiff's credit history or creditworthiness, or both.

59. Upon information and belief, Trans Union continues to report the inaccurate information as of today's date on Mr. Myler's file.

*Plaintiff's Experience with Trans Union*

9

60. During the two years preceding the date of Plaintiff's Complaint, Mr. Myler disputed the Inaccurate Information to Trans Union no less than three (3) times.

61. Plaintiff provided Trans Union with his PII, including his current address, previous address, full name, date of birth and social security number.

62. In support of his disputes, and in addition to his PII, Mr. Myler provided Trans Union with relevant information, including but not limited to: identification of the inaccurate information, the Inaccurate Information is the result of fraud, the loan was opened in California, and Mr. Myler has never been to California, contact information for the Cookeville Police Department and the FTC, including case and report numbers for identity theft reports related to his fraud claim, Plaintiff's telephone number and e-mail address, sworn affidavit, and signature exemplars.

63. Additionally, Mr. Myler provided Trans Union with legible copies of documents in support of his fraud claim, including but not limited to his government issued identification card with photo and the Cookeville Police Department's identity theft report.

64. Trans Union purportedly completed its reinvestigations of the Inaccurate Information.

65. Trans Union generated at least one dispute results stating it verified the Inaccurate Information belonged to Plaintiff.

66. Trans Union did not delete the Inaccurate Information after receipt of no less than three (3) disputes.

67. Plaintiff provided Trans Union with an identity theft report in support of his dispute of the inaccurate information.

68. On at least one occasion, Trans Union failed to block the disputed information after receipt of an identity theft report or notify Mr. Myler of the business name and address of any furnisher that it contacted upon receiving the identity theft report and that Plaintiff has a right to add a statement to the file disputing the accuracy or completeness of the disputed information.

69. On at least one occasion during the two years preceding the date of Plaintiff's Complaint, Plaintiff notified Trans Union that he was a victim of identity theft and requested his file from Trans Union.

70. In the two (2) years preceding the date of Plaintiff's Complaint, Trans Union received Plaintiff's requests for his file on no less than three occasions and while a fraud alert appeared on his file. On at least three occasions, Trans Union failed to provide Plaintiff with his file.

71. Upon information and belief, Trans Union prepared and continues to prepare consumer reports related to Plaintiff that include the Inaccurate Information.

### *Trans Union Parroted the Furnisher's Responses and Did Not Perform a Reasonable Reinvestigation of Plaintiff's Disputes*

72. The FCRA is clear. A CRA does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *Report & Recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D.

Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.")

73.     Here, and in response to Plaintiff's disputes, Trans Union merely parroted the furnisher's response as its own and did not perform a meaningful or systemic investigation of Plaintiff's disputes.

74.     Trans Union did not contact third parties, including but not limited to law enforcement, *e.g.*, Cookeville Police Department or the FTC, or both, or San Bernadino Valley College, concerning the accuracy of the disputed information.

75.     Trans Union also did not review underlying account documents related to the Inaccurate Information contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the promissory note, application for credit or any underlying account documents.

76.     Trans Union did not conduct any handwriting analysis on Plaintiff's signature or the signatures related to the Inaccurate Information.

77.     Trans Union did not make a reasonable inquiry into the disputed information.

78.     Trans Union did not review all relevant information provided by Plaintiff related to the disputed information.

79.     At best, Trans Union verified the Inaccurate Information simply parroting the furnisher's verification of Plaintiff's ownership of the Account.

80.     Trans Union failed to modify or delete all the Inaccurate Information.

81.     Despite Plaintiff's exhaustive efforts to date, Trans Union has nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

12

82. As of result of the Trans Union's conduct, Plaintiff has suffered multiple concrete and particularized injuries that are unique and distinct in the form of adverse credit action, chilling effect on applying for new credit, lost credit opportunities, expenditure of time, out-of-pocket expenses and emotional distress.

83. At all times pertinent hereto, Trans Union was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendant herein.

84. At all times pertinent hereto, Trans Union's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and Plaintiff's FCRA rights.

85. Trans Union's conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Mr. Myler that are outlined more fully above and, as a result, Trans Union is liable to Plaintiff for the full amount of statutory, actual and punitive damages, attorneys' fees and the costs of litigation, as well as such further relief as may be permitted by law for its violations of the FCRA.

**COUNT ONE – VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681e(b)**

86. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

87. Trans Union willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate account information.

88. Alternatively, Trans Union negligently violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff when it reported the inaccurate account information.

89. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

90. Because of Trans Union's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT TWO – VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681i(a), *et seq.*

91. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

92. Trans Union willfully violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete each disputed item from Plaintiff's credit files.

93. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete each disputed item from Plaintiff's credit files.

94. Trans Union willfully violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

95.     In the alternative, Trans Union negligently violated 15 U.S.C. § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes.

96.     Trans Union willfully violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

97.     In the alternative, Trans Union negligently violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

98.     Trans Union willfully violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

99.     In the alternative, Trans Union negligently violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon a lawful reinvestigation.

100.    As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

101.    Because of Trans Union's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE – VIOLATIONS OF THE FCRA**
**15 U.S.C. §§ 1681g, *et seq*.**

102.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

103.    Trans Union willfully violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all the Plaintiff's information that it maintained on Mr. Myler's file after receipt of Plaintiff's request.

104. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all Mr. Myler's information that it maintained on Plaintiff's file after receipt of his requests.

105. Trans Union willfully violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in Plaintiff's file after receipt of Plaintiff's request.

106. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all the sources of the information maintained in Plaintiff's file after receipt of Plaintiff's requests.

107. Trans Union willfully violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured Plaintiff's consumer report within the prior one or two years, as applicable, after receipt of his requests.

108. In the alternative, Trans Union negligently violated § 1681g(a)(3) by failing to identify each person that procured Plaintiff's consumer report within the prior one or two years, as applicable, after receipt of his requests.

109. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above. Further, Plaintiff suffered damages including confusion, lack of information, frustration, the inability to determine the sources of that information, the inability to determine the identities of each person who procured his file, as well as lost time.

110. Trans Union's failure to disclose all information in its possession related to Plaintiff, the source of this information, and the identities of each person that procured the information maintained in its database about the Plaintiff was an act or omission committed in violation of the rights conferred to Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

16

111. Because of Trans Union's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT FOUR – VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681c-1 *et seq.*

112. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

113. In the two years preceding the date of Plaintiff's Complaint, Plaintiff requested his consumer disclosure from Trans Union.

114. Trans Union received Plaintiff's request for his file.

115. At the time Trans Union received Plaintiff's requests, Trans Union included a fraud alert, as defined by 15 U.S.C. § 1681a(q)(2), in Plaintiff's file.

116. Trans Union willfully violated 15 U.S.C. §§ 1681c-1(a)(2)(B) and 1681c-1(b)(2)(B) when it failed to timely, or otherwise, provide Plaintiff with his consumer disclosure.

117. In the alternative, Trans Union negligently violated 15 U.S.C. §§ 1681c-1(a)(2)(B) and 1681c-1(b)(2)(B) when it failed to timely, or otherwise, provide Plaintiff with his consumer disclosure.

118. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

119. Because of Trans Union's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT FIVE – VIOLATIONS OF THE FCRA
### 15 U.S.C. §§ 1681c-2, *et seq.*

17

120. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

121. Plaintiff provided Trans Union with proof of his identity.

122. Plaintiff provided Trans Union with a copy of an identity theft report.

123. In his disputes, Plaintiff identified the items of information that appeared in his Trans Union file due to identity theft.

124. Trans Union willfully violated 15 U.S.C. § 1681c-2(a) by failing to timely block the disputed items of information.

125. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681c-2(a) by failing to timely block the disputed items of information.

126. Trans Union willfully violated, upon information and belief, 15 U.S.C. § 1681c-2(b) when it failed to notify the furnisher of the disputed items of information may be the result of identity theft, that an identity theft report has been filed, that a block has been requested, or the effective dates of the block.

127. In the alternative, Trans Union negligently upon information and belief, 15 U.S.C. § 1681c-2(b) when it failed to notify the furnisher of the disputed items of information may be the result of identity theft, that an identity theft report has been filed, that a block has been requested, or the effective dates of the block.

128. Trans Union willfully violated 15 U.S.C. § 1681c-2(c)(2) when it failed to timely notify Plaintiff of its decision to decline to block the disputed items of information.

129. In the alternative, Trans Union negligently violated 15 U.S.C. § 1681c-2(c)(2) when it failed to timely notify Plaintiff of its decision to decline to block the disputed items of information.

130.    As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above.

131.    Because of Trans Union's violations of the FCRA, Plaintiff seeks and is entitled to recover from Defendant actual, punitive, and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

## JURY DEMAND

132.    Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against Defendant as follows:

**On the First Claim for Relief**:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and,

4. Attorneys' fees and costs.

**On the Second Claim for Relief:**

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and,

4. Attorneys' fees and costs.

**On the Third Claim for Relief:**

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and,

4. Attorneys' fees and costs.

**On the Fourth Claim for Relief:**

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and,

4. Attorneys' fees and costs.

**On the Fifth Claim for Relief:**

5. Actual damages to be determined by the jury;

6. Punitive damages to be determined by the jury;

7. Statutory damages to be determined by the jury; and,

8. Attorneys' fees and costs.

And, granting further relief, in law or equity, as this Court may deem appropriate and just.

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
TN BAR NO. 036451
**THE ADKINS FIRM, P.C.**
8150 N. Central Expy., Suite 1000
Dallas, Texas 75206
(214) 974-4030 Main Telephone
(615) 370-4099 Direct Telephone
MicahAdkins@ItsYourCreditReport.com

*COUNSEL FOR PLAINTIFF*
*THOMAS MYLER*